## <u>CONTINUATION OF APPLICATION FOR A SEARCH WARRANT</u>

I, Amanda E. Becker, being duly sworn, depose and state the following:

### <u>Introduction and Agent Background</u>

1.  I am a Special Agent (SA) of the Federal Bureau of Investigation (FBI) and have been so employed since 2012.  I am currently assigned to the Detroit Field Office, Grand Rapids Resident Agency.  During my employment with the FBI, I have conducted investigations involving violations of federal criminal laws, including violations related to child exploitation and pornography.

2.  I am familiar with the various statutes of Title 18, United States Code, Chapter 110 – sexual exploitation and other abuse of children, including violations pertaining to sexual exploitation and attempted sexual exploitation of children (18 U.S.C. § 2251(a)), distribution or receipt of child pornography (18 U.S.C.§ 2252A(a)(2)) and possession of child pornography (18 U.S.C. § 2252A(a)(5)(B). I am also familiar with the various statutes of Title 18, United States Code, Chapter 77, including 18 U.S.C. § 1591, which prohibits the sex trafficking of minors. I am a federal law enforcement officer and, therefore, authorized by the Attorney General to request a Search Warrant under Federal Rule of Criminal Procedure 41.

3.  The statements contained in this Continuation are based upon information acquired during my investigation, as well as information provided by others such as other police officers, and Task Force Officers (TFOs) and Special Agents of the FBI.

4. Because this Continuation is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts I believe necessary to establish probable cause to believe that there is evidence of criminal activity.

5. This affidavit is made in support of an application for a search warrant for samples of DNA contained within cheek cells/saliva (buccal swab) of **Terrence Donte Clay**.  I make this continuation in support of an application for a search warrant to collect a DNA buccal swab from the person of **Terrence Donte Clay**, of Grand Rapids, Michigan, to examine it for evidence of Sex Trafficking and Attempted Sex Trafficking of a Child in violation of 18 U.S.C. § 1591(a), (b)(2), (c), (e)(3).

6. As set forth herein, there is probable cause to believe that comparison of a DNA sample, to be collected from the person of **Terrence Donte Clay** pursuant to this warrant will further the investigation regarding the above.

**PROBABLE CAUSE**

7. On October 21, 2022, investigators located and interviewed a 16-year-old female, **Victim A**, who was a runaway from Wedgewood youth home in Kentwood, Michigan.

8. **Victim A** told investigators that she was being "trafficked" by a male named **Terrence Donte Clay.** She stated she was at the library to meet men and coordinate the selling of sexual acts to different men.   **Victim A** stated

**Terrence Donte Clay** dropped her off at that location and she was responsible for making $200 for him throughout the day performing sex acts on different men.

9.  On October 21, 2022, investigators did a more formal forensic interview of **Victim A.  Victim A** told investigators that from the time she had left the Wedgwood group home, she had slept with around 11-12 males and had used a variety of narcotics. **Victim A** said that one of those males was **Terrence Donte Clay**, and stated that she had had sex with him multiple times. **Victim A** stated that she was staying with **Terrence Donte Clay** at various locations in Grand Rapids throughout the time she had been missing from the Wedgwood group home. She stated that he would purchase her clothing and had given her an iPhone that was in her possession when located.  **Victim A** stated that **Terrence Donte Clay** and one of his friends took nude photographs of her and posted those photographs on different websites promoting sex acts being performed by **Victim A. Victim A** told investigators that her and **Terrence Donte Clay** stayed at several hotels in the Grand Rapids area.

10. **Victim A** was able to describe **Terrence Donte Clay** as a black male with blond dreadlocks.  She stated that he was from Atlanta and drove a four-door silver vehicle.  Detective Huey was able to locate **Terrence Donte Clay**, date of birth 11/xx/1984[1], as a parolee from Georgia. Detective Huey was also able to

---

[1] The full date of birth is known to investigators.  It is not included here, in order to protect the personally identifiable information (PII) of Terrence Donte Clay.  The full date of birth can be provided to the Court upon request.

find a vehicle being registered to **Terrence Donte Clay** as a four-door silver Oldsmobile Alero plate EQW 1194.  This vehicle was shown to **Victim A** from a recent license plate reader and **Victim A** confirmed this was the vehicle she traveled in with **Terrence Donte Clay.**

11. **Victim A** had two phones on her person when located, and both were collected as evidence. **Victim A** gave written consent for investigation of one of the phones and gave the passcode of 692323.  That passcode was found to be the Michigan Department of Corrections (MDOC) number for **Terrence Donte Clay.**

12. MDOC was contacted by Detectives and jail calls were located to the number found to be **Terrence Donte Clay** of 616-881-7209.   These calls were recorded by the MDOC and turned over to Detective Huey.

13. During one of those phone calls **Terrence Donte Clay** spoke to a male who was currently incarcerated. In this phone call labeled (166-631-5936) on 10/20/2022, **Terrence Donte Clay** talked about buying an iPhone for his "hoe" and her not returning it to him.  This is the same night **Victim A** was taken into custody by police. On the phone, **Terrence Donte Clay** stated, "I got hoes selling pussy for me". **Terrence Donte Clay** stated that he still had another "hoe" and he needs to keep them in the hotel room to build their cliental and he has money invested in these "hoes".

14. Law enforcement learned **Victim A** was traveling with **Terrence Donte Clay** in a silver Oldsmobile Alero bearing MI registration EQW1194 and that

**Terrence Donte Clay** may be staying at hotels around Grand Rapids with other women being trafficked.  As a ward of the State out of Marquette County, **Victim A** was transported to the Upper Peninsula to her assigned Foster Care Home in Marquette Co.

15. On November 3rd, 2022, law enforcement obtained a search warrant and attached a GPS tracking device to **Terrence Donte Clay**'s Oldsmobile Alero. Law enforcement began monitoring **Terrence Donte Clay's** vehicle and discovered **Terrence Donte Clay's** place of employment is Proper Beverage Co. In Hudsonville, MI.  He was currently living at 166 Lamoreaux Dr NW.  Law enforcement observed **Terrence Donte Clay** driving the vehicle on multiple occasions.

16. On Saturday November 12th, 2022, law enforcement began monitoring GPS tracking data on **Terrence Donte Clay's** vehicle at 0800 hours. Tracking data showed the vehicle had left Grand Rapids in the late hours of November 11th, 2022, and arrived in Marquette Co., at approximately 0500 hours.  At the same time, law enforcement learned that **Victim A** was reported missing from her Foster Care Home. Forsyth Police Department began pinging **Victim A 's** phone (906) 251-1631 (Verizon) and the ping response was in the same area of the GPS tracking device placed on **Terrence Donte Clay**'s vehicle. Shortly after, Cheboygan Co. Sheriff located **Terrence Donte Clay's** vehicle on I-75 South, just south of the Mackinaw Bridge.  A traffic stop was initiated on **Terrence Donte Clay's** vehicle; **Terrence Donte Clay** and **Victim A** were the sole

occupants of the car.  **Terrence Donte Clay** was taken into custody and detained on a parole detainer.

17. Law enforcement contacted Cheboygan Co. Sheriff Deputy Hutchison. Hutchison reported that he learned, after interviewing **Victim A**, that she and **Terrence Donte Clay** were communicating by the way of text messaging and Snap Chat utilizing the username: jc_smokes247. **Victim A** said **Terrence Donte Clay** came to pick her up and they were planning on traveling to Atlanta, Georgia, (where **Terrence Donte Clay** is from) to live with his mother.  **Victim A** also stated "he [**Terrence Donte Clay**] knows who I am, he has been sex trafficking me for weeks."  **Victim A** stated **Terrence Donte Clay** had made her have sex with "a bunch of guys for money." **Victim A** explained she would stay in hotel rooms, trap houses, and be given cocaine, meth, and heroin while she had sex with males.  **Victim A** stated **Terrence Donte Clay** would also buy her clothes, shoes, and food. **Victim A** told law enforcement that **Terrence Donte Clay** would give her money from time to time.  **Victim A** said **Terrence Donte Clay** told her that she just needed to make a little bit more money for them so they can take off to Georgia.

18. During a forensic interview with **Victim A**, she stated she noticed **Terrence Donte Clay** had deleted recent text messages on his phone.  She explained that after being picked up by **Terrence Donte Clay** they stopped at a gas station. While **Terrence Donte Clay** was out of the car, she accessed his cellphone and looked at his messages.  **Victim A** stated that she noticed that all prior text

messages between herself and **Terrence Donte Clay** from earlier in the day were deleted.

## Michigan State Police Lab's Analysis

19. On December 16, 2022, GR22-5865-1Ada (**Victim A** - buccal) and GR22-5865-1Gd (right breast swabs) were submitted to the State of Michigan Department of State Police Forensic Science Division.  These swabs were taken from **Victim A** during a SANE exam on or about October 21, 2022.

20. On February 21, 2023, investigators received a laboratory report from the State of Michigan Department of State Police Forensic Science Division.  The laboratory report stated that a DNA profile was obtained from item GR22-5865-1Ada (**Victim A** - buccal) that was sufficient for comparison purposes. The DNA profile obtained from item GR22-5865-1Gd (right breast swabs) is consistent with multiple contributors, at least one of which genetically types as male. Item GR22-5865-1Ada (**Victim A** - buccal) is expected to have contributed to item GR22-5865-1Gd (right breast swabs). This profile is suitable for comparisons upon receipt of reference samples from possible additional contributors.

## DNA TESTING AND THE COLLECTION OF DNA SAMPLES

21. Based on my training and experience, including discussions with other law enforcement officers, I know that there are two sources of DNA used in forensic analyses. Nuclear DNA (nDNA) is typically analyzed in evidence containing blood, saliva, body tissue, and hairs that have tissue at their ends. Mitochondrial

DNA (mDNA) is typically analyzed in evidence containing naturally shed hairs and hair fragments. When DNA evidence is transferred by direct or secondary (indirect) means, it remains on surfaces by absorption or adherence. In general, liquid biological evidence is absorbed into surfaces and solid biological evidence adheres to an object. Current DNA tests are so sensitive that they can type the DNA found in samples containing only a few cells. Merely touching an object may leave enough DNA material that a forensic analysis will be able to match the object to the person who touched it.

22. DNA can be collected by buccal swabs via a painless, safe, and minimally-invasive technique by touching a cotton-tipped applicator against the inside of the person's check to collect a sample. The lab will then extract a person's DNA profile from the buccal swab, which will then be used for comparison purposes to the profile(s), if any, ultimately extracted from swabs collected from other evidence.

23. I propose to take the DNA samples sought herein in an entirely non-intrusive manner. Specifically, I seek to take buccal swabs from the inside of **Terrence Donte Clay**'s cheeks. The buccal swabs take moments, involves no risk to health, "no risk, trauma, or pain," and may be conducted in any secure location.

24. I have been informed by the United States Attorney's Office that it is well settled that the Fifth Amendment privilege against self-incrimination does not preclude the use of one's body as evidence. *Schmerber v. California*, 384 U.S. 757, 765 (1985); *Wilson v. Collins*, 517 F.3d 421, 431 (6th Cir. 2008); *Mcveigh v. Smith*,

872 F.2d 725, 727-28 (6th Cir. 1989). I have also been informed that procedures such as these do not implicate the Sixth Amendment. *See, e.g., Mcveigh*, 872 F.2d at 727.

## **CONCLUSION**

25. Based on the aforementioned facts, I respectfully submit that there is probable cause to conclude that Buccal Swab samples obtained from **Terrence Donte Clay**'s person will provide evidence of his potential contact with **Victim A** in violation of 18 U.S.C. § 1591(a), (b)(2), (c), and (e)(3). Those swabs will be compared against the DNA profile obtained from item GR22-5865-1Gd (right breast swabs).

26. Wherefore, by this continuation and application, I respectfully request that the Court issue a search warrant that would allow agents to search for and seize evidence from **Terrence Donte Clay**.